186 So.2d 71 (1966)
VENICE EAST, INC., a Florida Corporation, and U.S. Land Development Corporation, a Florida Corporation, Appellants,
v.
Andrew T. MANNO, Venice Country Estates, Inc., a Florida Corporation, Venice Country Club, Inc., a Florida Corporation, and James O. Wright, Appellees.
No. 5840.
District Court of Appeal of Florida. Second District.
March 30, 1966.
On Rehearing May 13, 1966.
Rehearing Denied May 13, 1966.
*73 Patrick G. Emmanuel, of Holsberry, Emmanuel & Sheppard, Pensacola, for appellants.
Charles J. Cheves, Jr., of Icard, Merrill, Cullis & Timm, Sarasota, for appellees.
LILES, Judge.
Appellants, Venice East, Inc. and U.S. Land Development Corporation, Florida corporations, plaintiffs in the trial court, bring this appeal from a decree entered in favor of appellees, Andrew T. Manno, Venice Country Estates, Inc. and Venice Country Club, Inc., Florida corporations, and James O. Wright, defendants below.
In 1961 plaintiff Venice East, Inc., was a wholly owned subsidiary of plaintiff U.S. Land Development Corporation. They were in the business of developing and selling land and had designated Venice East, Inc., as the corporation to hold title to all real property owned by them. Defendant Manno was one of the original incorporators and officers of U.S. Land Development Corporation, and was a major stockholder and director. During June of 1961, defendant Manno resigned his posts as director and secretary-treasurer of that corporation. He was retained, however, as an advisor for a period of thirty days to acquaint the new officers with current matters pending in the corporation. In April of 1962, he was again retained in the capacity of advisor for another thirty day period but he never, subsequent to June of 1961, held any official position in the corporation although the record reflects that he attended several meetings of the board of directors and upon request advised the then corporate officers.
One of the problems facing plaintiffs in the summer of 1961 was a small golf course adjacent to several lots they intended to develop as a residential area. The golf course was intended to stimulate lot sales but in its present poor condition it had doubtful promotional value. In August of 1961 at a directors' meeting, defendant Manno, who was only a stockholder of the plaintiff at the time, proposed to purchase the golf course and several of the undeveloped lots and improve the golf course by various additions. In September of 1961 an agreement was entered into between Manno and the plaintiffs which in addition to the sale of the property provided that Manno would construct an elaborate club house on the golf course, improve the course and maintain it for ten years. Plaintiffs were to receive $1,200.00 from the sale of each lot and the entire transaction was to be secured by a $57,000.00 mortgage.
After the execution of the first agreement, directors of plaintiff corporations decided it would be better to construct a community center on other property located in the subdivision. The original agreement with Manno was therefore modified and two new contracts were drawn up. The agreements provided that the subject property was to be conveyed to Venice Country Club, Inc. and Venice Country Estates, Inc., the two defendant corporations. It was admitted that Manno and his family owned most, if not all, of the stock in these two corporations. One of the agreements dealt with the conveyance of the golf course property to defendant Venice Country Club, Inc. and provided that the buyer would construct a club house, expand the golf course to a 60-par course and would operate these facilities for at *74 least ten years. Plaintiffs agreed to pay defendant $75.00 for each lot sold in the Venice East Subdivision for membership fees in the golf course.
The other agreement provided for the sale of approximately 48 residential lots to defendant Venice Country Estates, Inc. Defendant agreed to pay $1,000.00 to plaintiff upon the sale of each lot. Neither of these agreements provided for a note or mortgage and none was executed by defendant buyer. The agreements were subsequently executed in November of 1961 and the conveyances followed shortly thereafter.
In June of 1963 plaintiffs filed this suit against defendants Manno, Wright and the two corporations. The primary relief sought was to have the agreements declared void and the conveyances of the property set aside. In addition, the plaintiffs alleged a breach of these agreements in that defendants had failed to comply with the terms thereof. The cause was heard in October of 1964 and after two days of testimony, the chancellor found no equity in plaintiffs' bill and ruled that the plaintiffs had failed to show that they were entitled to the relief prayed for. The chancellor, however, held that his decree would not operate to prevent plaintiffs from bringing an action upon the agreements themselves.
Plaintiffs relied mainly on the theory that the conveyances were made for little or no security and no cash payment was made in violation of Section 608.55, Fla. Stats., F.S.A., which reads as follows:
"No corporation which shall have refused to pay any of its notes or other obligations when due, nor any of its officers or directors, shall transfer any of its property to any of its officers, directors or stockholders, directly or indirectly, for the payment of any debt, or upon any other consideration than the full value of the property paid in cash. No conveyance, assignment or transfer of any property of any such corporation by it or by any officer, director or stockholder thereof, nor any payment made, judgment suffered, lien created or security given by it or by any officer, director or stockholder when the corporation is insolvent or its insolvency is imminent, with the intent of giving a preference to any particular creditor over other creditors of the corporation, shall be valid. Every person receiving by means of any such prohibited act or deed any property of a corporation shall be bound to account therefor to its creditors or stockholders. No holder of stock not fully paid in any corporation shall transfer it to any person in contemplation of the corporation's insolvency. Every transfer or assignment or other act done in violation of the foregoing provision of this section shall be void except in the hands of a purchaser for a valuable consideration without notice. The directors or officers of a corporation who shall violate or be concerned in violating any provision of this section shall be personally liable to the creditors and stockholders of the corporation of which they shall be directors or officers to the full extent of any loss such creditors and stockholders may respectively sustain by such violation."
Plaintiffs contended that the testimony showed that at the time of the conveyances plaintiffs had several outstanding debts which they had not yet paid. They relied primarily upon the first portion of the above-quoted statute relating to a "corporation which shall have refused to pay any of its notes or other obligations when due." Plaintiffs argue that defendant Manno was a stockholder in U.S. Land Development Corporation; that the defendant corporations were his alter egos and that the conveyances were not for the full cash value of the property. Thus, say plaintiffs, the conveyances were void under § 608.55, Fla.Stats., F.S.A.
The answer to this argument lies in the construction of the statutory words "refused *75 to pay any of its notes or other obligations when due." There is sufficient evidence in the record to show that plaintiffs had not paid all its obligations when due and had postponed payment on several bills. There was no showing, however, that plaintiffs had absolutely refused to pay these debts. "Refused" and "failed" are not necessarily synonymous. We concede that there might be instances where repeated postponement would actually amount to refusal, but we do not feel this to be the case here.
Section 608.55, Fla.Stats., F.S.A., is patterned after Section 15 of the New York Stock Corporation Law, McK.Consol. Laws, c. 59. A construction of the section by the courts of New York may be considered by Florida courts in construing our statute. Jasson D. Radding, Inc. v. Coulter, 138 So.2d 380 (D.C.A.Fla. 1962); Denmark v. Ridgell Furniture Co., 117 Fla. 244, 157 So. 489 (1934). It has been held that where a corporation may be in straitened financial circumstances and have difficulty meeting its obligations, it has not necessarily reached the extreme position of refusing to pay within the meaning of the statute. Swan v. Stiles, 94 App.Div. 117, 87 N.Y.S. 1089 (1904). Cf. Bielaski v. Nat'l City Bank of New York, 58 F.2d 657 (D.C.N.Y. 1932). In the instant case there seems to be no doubt that at the time the conveyances were made to the defendants, plaintiff corporations were in straitened financial circumstances, but we do not feel that they had refused to pay their obligations within the meaning of § 608.55, Fla.Stats., F.S.A., and thus plaintiffs are afforded no relief under the statute.
Plaintiffs also contend that Manno had obtained the conveyances through undue influence over plaintiffs' board of directors and that defendant had failed to give adequate consideration. In support of this contention, they cite the fact that defendant Manno had attended several board meetings during the time when he was only a stockholder; that plaintiff corporations relied on him for advice and they delegated complicated business transactions to him for handling. We find no evidence of undue influence on the board of directors, they being men of supposed business acumen, nor can we conclude that they were "duped" into making these agreements and conveyances. We are in no position to question the prudence of the transactions, and there is no showing of circumstances which dethroned the free agency of the members of the board of directors. See Peacock v. DuBois, 90 Fla. 162, 105 So. 321 (1925).
Likewise, we cannot inquire into the adequacy of the consideration given for the disputed conveyances. It is fundamental that the law will not consider the adequacy or the sufficiency of the consideration given for a conveyance or transaction. Defendants agreed to improve and maintain the golf course and to pay $1,000.00 for each lot sold in return for the conveyances. While some might question the advisability of such a transaction, the legal consideration cannot be disputed.
For these reasons we therefore conclude that the chancellor was correct in refusing to invalidate the agreements and set aside the conveyances.
As heretofore recited, the primary purpose of plaintiffs' suit was to set aside the conveyances. They did, nevertheless, allege that defendants had failed to abide by the agreements. The chancellor made no determination as to these allegations but held that his decree would not prohibit plaintiff from bringing an action on these agreements. We feel this was error.
It is well settled that once equity jurisdiction has attached to a cause, it will be retained for all purposes and will administer full, complete and final relief. 12 Fla.Jur., Equity, § 43. Equity will retain jurisdiction and finally dispose of litigation even though this might involve a determination of legal rights. 12 Fla.Jur., *76 Equity, § 44. Plaintiffs alleged a breach of both agreements. Testimony indicated that while some improvements had been made to the golf course, the club house had not been constructed and other additions had not been made. The pleadings admitted that defendants had sold at least seven of the lots but had not paid plaintiffs pursuant to the agreement. The chancellor should have determined the rights and liabilities of each of the parties under the agreements. That portion of his decree stating that the parties are not prohibited from litigating their rights under the agreements is therefore reversed and the cause remanded for a determination of the parties' rights and liabilities under the agreements. Should he feel it necessary to insure a proper and just decision, the chancellor may conduct further hearings in this regard.
Affirmed in part, reversed in part, and remanded for further action not inconsistent with this opinion.
SHANNON, Acting C.J., and PIERCE, J., concur.

On Petition for Rehearing
LILES, Judge.
Appellees have filed a Petition for Rehearing questioning that portion of our opinion which states that the chancellor erred in not determining the rights of the parties under the agreements. They argue that since the chancellor was sustained in his finding that appellants had failed to establish any grounds for equitable relief, he is without jurisdiction to determine whether they are entitled to any legal relief under the agreements. This argument has merit.
It is true that where a court of equity takes jurisdiction of a case for one purpose it will proceed with the determination of all matters properly presented, and it will settle purely legal questions which otherwise would be beyond the scope of the powers of equity. Hackney v. Enslee, 138 Fla. 475, 189 So. 825 (1939); Hartford Fire Ins. Co. v. Brown, 119 Fla. 610, 160 So. 657 (1935). Under the proper circumstances equity may award damages and render a personal decree for the payment of money. Winn & Lovett Grocery Co. v. Saffold, 121 Fla. 833, 164 So. 681 (1935). However, in order for equity to grant legal relief incident to the cause, the basis for equitable relief must first be established. Some substantial ground of equitable jurisdiction must be alleged and proven, or a court of equity will not retain jurisdiction to grant a purely legal remedy. See, e.g., Manning v. Clark, 56 So.2d 521, (Fla. 1951); Cobb v. Walker, 144 Fla. 600, 198 So. 324 (1940); Levitt v. Axelson, 102 Fla. 233, 135 So. 553 (1931).
The case at bar seems to fall within this latter rule. Appellants failed to prove any basis for equitable relief they sought, and thus the chancellor was without jurisdiction to determine whether they were entitled to any legal relief.
The chancellor provided, however, that his decree "* * * shall not operate to prohibit the plaintiffs or their successors in title from bringing such action and the Defendants from asserting such defenses regarding the provisions contained in the agreements * * * as they see fit." Rule 1.39(a), Florida Rules of Civil Procedure, 30 F.S.A., provides:
"If at any time it appears that an action has been commenced either in equity or at law when it should have been brought on the opposite side of the court it shall be forthwith transferred to the proper side and proceeded without interruption. * * *"
Thus, rather than dismissing the case without prejudice to any right appellants might have to prosecute an action at law, the chancellor should have transferred the case to the law side of the court. Zajicek v. Bernier, 152 So.2d 525 (D.C.A.Fla. 1963); Staiger v. Greb, 97 So.2d 494 (D.C.A.Fla. *77 1957); Miller v. Rolfe, 97 So.2d 132 (D.C.A.Fla. 1957).
In view of the above, we recede from that portion of our original opinion stating that the chancellor committed error in failing to determine the rights and liabilities of each of the parties under the agreements and reversing the chancellor on that basis. Instead we hold that the chancellor, upon finding no equity in appellants' bill, should have transferred the cause pursuant to the provisions of Rule 1.39(a), Florida Rules of Civil Procedure. That portion of the chancellor's decree dismissing the cause without prejudice to any right appellants might have to prosecute an action at law is reversed and the cause remanded for the entry of an order transferring the case to the law side of the court. In all other respects, we adhere to our original opinion.
SHANNON, Acting C.J., and PIERCE, J., concur.