DICK DIMOND, Appellant, v. LILLIAN B. LINNECKE,
as Executrix of the Estate of Henry F. Lin-
necke, aka Harry F. Linnecke, aka H. F. Linnecke,
Respondent.

No. 6356

September 27, 1971                    489 P.2d 93

*Stewart, Horton & McKissick,* of Reno, for Appellant.

*Frank R. Peterson,* of Reno, for Respondent.

## OPINION

By the Court, BATJER, J.:

On January 30, 1962, Henry F. Linnecke, one of the principal creditors of Ready-Mix Western, Inc., a Nevada corporation, the successor of Ready-Mix Concrete Co., a Nevada corporation, and its wholly-owned subsidiary, Vista Rock Products, Inc., a Nevada corporation, entered into an assignment and pledge of corporate stock with Francis R. Smith, the sole stockholder of these corporations, whereby Linnecke was granted the right to vote all the corporate stock of the corporations. Smith and the other officers and directors remained in office for a short time thereafter until a creditor's committee, headed by Linnecke, removed them as officers and directors and replaced them with Linnecke, his wife, his son and Manford Perry. Linnecke remained in control of the corporations until June 4, 1965 when Smith and Linnecke entered into an agreement whereby Linnecke relinquished all claims against the corporations and returned the management and stock to Smith in consideration for the sum of $168,231.85. The funds were acquired by borrowing on a lease to a third

party of a gravel pit owned by the corporations and by selling scrap metal and "junk" belonging to the corporations for $35,-000. These transactions were accomplished upon the anticipation that control and management would be returned to Smith. He remained in control of the corporations as president and director until 1967 when involuntary bankruptcy proceedings were commenced.

On June 3, 1968, the appellant, as trustee in bankruptcy, filed a complaint against the respondent as the executrix of the estate of Henry F. Linnecke, deceased, alleging that the payment to Linnecke was in violation of NRS 78.625 and void.

This appeal is taken from the dismissal of the appellant's complaint. He contends that the transfer to Linnecke was illegal and void within the provisions of NRS 78.625(1) and/or NRS 78.625(2).[1]

The trial court determined that the payment to Linnecke did not fall within the restrictions of NRS 78.625(1) because it was not a transfer of property in "kind" and it also noted that there was no evidence that the respondent had refused to pay its debts. The record does not indicate any direct statement on the part of representatives of the corporation that it would not pay its debts; rather it appears the failure to pay and the postponement of payments was dictated by a lack of funds.

According to testimony relied on by the appellant, Ready-Mix was $2,300,000 in debt when Linnecke took over, and when Smith went back into control after the payment to Linnecke, Ready-Mix was $750,000 in debt. Vonderhide, the vice-president, claimed in rough figures that he paid debts in the amount of $150,000 during the two years of operation after Linnecke was out and before bankruptcy.

---

[1]NRS 78.625(1): "No corporation which shall have refused to pay any of its notes or other obligations, when due, in lawful money of the United States, nor any of its officers or directors, shall transfer any of its property to any of its officers, directors or stockholders, directly or indirectly, for the payment of any debt, or upon any other consideration than the full value of the property paid in cash."

NRS 78.625(2): "No conveyance, assignment or transfer of any property of any such corporation by it or by any officer, director or stockholder thereof, nor any payment made, judgment suffered, lien created or security given by it or by any officer, director or stockholder when the corporation is insolvent or its insolvency is imminent, with the intent of giving a preference to any particular creditor over other creditors of the corporation, shall be valid. Every person receiving by means of any prohibited act or deed any property of a corporation shall be bound to account therefor to its creditors or stockholders."

The prohibition in NRS 78.625(1) is limited to a corporation which has "refused to pay any of its notes or other obligations, when due." Ready-Mix did not "refuse" to pay its obligations and it certainly did not "refuse to pay *any* of its obligations" because the record indicates that it paid many of its obligations but not all of them, and that it was eventually forced into bankruptcy. Here the phrase "any of its notes or other obligations when due" must be construed to mean a general refusal to pay. Here the word "any" must be construed to mean "all" or "every" and when a corporation is paying some of its notes and obligations it is not within the restrictions of NRS 78.625(1).

Any other interpretation of the word "any" in this context would becloud the transfer of any corporate property whatsoever other than for full value, regardless of the financial condition of the corporation, unless at the moment of payment or transfer all corporate debts were paid in full. The statute must be read in the light of what is reasonable and not merely what is conceivable. Hill v. Celebrezze, 233 F.Supp. 298 (E.D.S.C. 1964); Mullins v. Cohen, 296 F.Supp. 181 (W.D.Va. 1969); Celebrezze v. Bolas, 316 F.2d 498 (8th Cir. 1963). NRS 78.625(1) contains no time limitation. Such a transfer or payment as above noted could take place when a corporation was financially healthy, and years later if it ran into financial difficulty such a transfer would be rendered invalid. This could not be the intent of the legislature.

Donohue v. Zoning Bd. of App. of Town of Norwalk, 235 A.2d 643 (Conn. 1967); State v. Brown, 129 N.E.2d 468 (Ohio 1955). The word "any" is capable of a diversity of meanings and may be employed to indicate "all" or "every" as well as "some" or "one." Its meaning in a given statute depends upon the context and subject matter of the statute.

This court has never before been called upon to construe NRS 78.625(1)(2). However, that section is very similar to Section 608.55, Fla. State, F. S. A. and Section 15 of the New York Stock Corporation Law. McK. Consol. Laws, C 59, as that section read prior to its amendment in the year 1929. Construction of those sections by the courts of Florida and New York are here being considered in construing our statute. Cf. Ex parte Skaug, 63 Nev. 101, 164 P.2d 743 (1945); Kramer v. State, 60 Nev. 262, 108 P.2d 304 (1940); Stocks v. Stocks, 64 Nev. 431, 183 P.2d 617 (1947); Thran v. First Judicial District Court, 79 Nev. 176, 380 P.2d 297 (1963).

In Venice East, Inc. v. Manno, 186 So.2d 71, 74–75 (Fla. 1966), that court laid down the following guidelines relative

to the interpretation of the term "refused:" "The answer to this argument lies in the construction of the statutory words 'refused to pay any of its notes or other obligations when due.' There is sufficient evidence in the record to show that plaintiffs had not paid all its obligations when due and had postponed payment on several bills. There was no showing, however, that plaintiffs had absolutely refused to pay these debts. 'Refused' and 'failed' are not necessarily synonymous. We concede that there might be instances where repeated postponement would actually amount to refusal, but we do not feel this to be the case here." Although a corporation may be in rather desperate financial circumstances and have difficulty meeting its obligations, it cannot be assumed that it has reached the extreme position of refusing to pay. Swan v. Stiles, 87 N.Y.S. 1089 (Sup.Ct. 1904); Cf. Bielaski v. National City Bank of New York, 58 F.2d 657 (S.D.N.Y. 1932).

The word "refused" as used in NRS 78.625(1), denotes something more than a mere passive failure. A refusal usually means a previous demand or request or the existence of circumstances equivalent thereto. As used in NRS 78.625(1), it means more than mere inert default by neglect. Accord, County Canvassing Board, Etc. v. Lester, 118 So. 201 (Fla. 1928). Here the record is clear that at the time Smith regained control of the corporations they were in straitened financial circumstances, but the record does not reveal that they had refused to pay their obligations within the meaning of NRS 78.625(1). On the contrary, Smith operated the business for nearly two years after assuming control, and paid in the neighborhood of $150,000 to creditors. The appellant cannot claim relief under NRS 78.625(1).

In Inhabitants of Cape Elizabeth v. Boyd, 29 A. 1062–1063 (Maine 1894), it was held: "A refusal to pay a tax is one thing; a failure to pay is another. The former may be the result of willfulness, or a denial of the legality of the tax. The latter may be the result of sickness and poverty, and an utter inability to pay."

Chief Justice Marshall of the United States Supreme Court in Taylor v. Mason, 22 U.S. 325, 344 (1824), wrote: "[T]here is a manifest distinction between 'refusing' and 'failing' to comply with it. The first is an act of the will, the second may be an act of inevitable necessity."

The fact that the corporations conducted a business for almost two years after the payment to Linnecke and during

that time paid approximately $150,000 to their creditors manifests no willful refusal to pay, but an eventual inability to pay.

The trial court specifically found that NRS 78.625(1) was not applicable because the transfer to Linnecke was a payment of cash and "not a transfer of property in 'kind' " for which Linnecke failed to pay the full value of the property in cash. We agree. The purpose of the statute is to preclude a corporation that finds itself in poor financial condition from transferring its assets to an officer, director or stockholder for anything but the full value of the asset paid in cash. This statute does not prohibit the payment of a debt owed to an officer, director or stockholder.

The appellant further contends that the payment to Linnecke was invalid because it violated the provisions of NRS 78.625(2). Before a transfer comes within that subsection the record must show the insolvency of the corporation and the intent to prefer the particular creditor to whom payment was made.

The courts in New York and Florida, construing statutes similar to NRS 78.625(2), have held that a corporation is insolvent if it is unable to meet its obligations in due course or unable to pay its debts in the ordinary course of business. Todarelli v. Visigraph Typewriter Mfg. Co., 34 F.Supp. 762 (S.D.N.Y. 1940); Bielaski v. National City Bank of New York, supra. See also Bennett v. Gleisch, 3 F.Supp. 709 (E.D. N.Y. 1932); Davis v. Seneca Falls Mfg. Co., 17 F.2d 546 (2nd Cir. 1927), and Freehling v. Michigan Repacking and Produce Company, 426 F.2d 989 (5th Cir. 1970); In re Mobilift Equipment of Florida, Inc., 415 F.2d 841 (5th Cir. 1969).

In light of such interpretation of the meaning of insolvency the record clearly shows that Ready-Mix and Vista were insolvent from 1962 until bankruptcy proceedings were commenced in 1967. The trial court found insolvency but no intent to prefer. We agree.

In Cardozo v. Brooklyn Trust Co., 228 F. 333, 334 (2nd Cir. 1915), that court said: "What, then, is the meaning of 'intent to prefer' as used in the statute? In the sense that a person is said to intend the natural consequences of his acts, it may be argued that any payment to one creditor at a time when a corporation is unable to pay all creditors manifests an

intention to prefer the creditor who is actually paid. But this is obviously not the meaning of the statutory requirement of an intent to prefer in addition to insolvency, for such a construction would render the required intent superfluous and virtually eliminate it from the statute. It seems to me that the true meaning is that, to constitute a preference, the corporation or its officers making a payment must have known or expected that it would have that effect. (Citing authority.) The statute is meant to apply when the corporation is confronted with the problem: How are the assets of the corporation to be used, not in carrying on its business, but in meeting its obligations. (Citing authority.) In other words, the question is whether the payment was made in contemplation of insolvency and winding-up as an impending fact, or in contemplation of continuing business in good faith."

In Freehling v. Michigan Repacking and Produce Company, supra, at 990–991, the court held: " '[I]ntent to prefer' is present only when payments are made in contemplation of insolvency and winding up of the business as an impending fact. Intent to prefer is not present when such payments are made with the good faith intention of continuing in business."

A similar conclusion was reached in Bielaski v. National City Bank of New York, supra, where the court concluded that a transfer is without intent to prefer if there is a good faith belief that the "gods will smile" and the corporation will be able to continue in business after the transfer. In accord, Todarelli v. Visigraph Typewriter Mfg. Co., supra; Drewen v. Union Discount Co., 32 F.2d 691 (2nd Cir. 1929); In re Fred Stern & Co., 54 F.2d 478 (2nd Cir. 1931); Pender v. Levine, 44 F.2d 819 (S.D.N.Y. 1930); Haberman v. Larens Corporation, 35 N.Y.S.2d 533 (Sup.Ct. 1942).

The record clearly supports the trial court's determination that the payment to Linnecke was made with intent to continue the business, hopefully in a profitable vein, and not for the purpose of treating Linnecke as a preferred creditor. Immediately after Smith regained control of the corporation, the vice-president, Henry J. Vonderhide, wrote to its creditors revealing future plans for the management of the corporations and expressing the intent to go forward with the business. This expression by the corporations, together with the fact that they continued in active business for nearly two years thereafter, belies any intent to windup the business. It appears that there was a good faith intention of continuing in business when control was purchased from Linnecke. In fact, continuing and

rejuvenating the business was the entire purpose of regaining control from Linnecke. No intent to prefer exists when such payments are made with the good faith intention of continuing in business. Insolvency alone is not sufficient to make the transfer void under NRS 78.625(2).

The judgment of the district court is affirmed.

ZENOFF, C. J., MOWBRAY, THOMPSON, and GUNDERSON, JJ., concur.