137 Nev., Advance Opinion 72
IN THE SUPREME COURT OF THE STATE OF NEVADA

JAMES PARSONS, INDIVIDUALLY AND AS SPECIAL ADMINISTRATOR OF THE ESTATE OF CAROLYN LEE PARSONS; AND ANN-MARIE PARSONS,
Appellants,
vs.
COLT'S MANUFACTURING COMPANY LLC; COLT DEFENSE LLC; DANIEL DEFENSE INC.; PATRIOT ORDNANCE FACTORY; FN AMERICA; NOVESKE RIFLEWORKS LLC; CHRISTENSEN ARMS; LEWIS MACHINE & TOOL COMPANY; LWRC INTERNATIONAL LLC; DISCOUNT FIREARMS AND AMMO LLC; DF&A HOLDINGS, LLC; MAVERICK INVESTMENTS, LP; SPORTSMAN'S WAREHOUSE; AND GUNS AND GUITARS INC.,
Respondents.

No. 81034



FILED

DEC 02 2021

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Certified questions under NRAP 5 concerning the scope of immunity NRS 41.131 affords firearm manufacturers and distributors and Nevada's negligence per se doctrine; United States District Court for the District of Nevada; Andrew P. Gordon, District Judge.

*Questions answered in part.*

Friedman Rubin PLLC and Richard H. Friedman, Bremerton, Washington; Koskoff, Koskoff & Bieder, PC, and Joshua D. Koskoff and Alinor C. Sterling, Bridgeport, Connecticut; Matthew L. Sharp, Ltd., and Matthew L. Sharp, Reno,
for Appellants.

Hejmanowski & McCrea LLC and Paul R. Hejmanowski, Las Vegas; Williams Mullen, PC, and Camden R. Webb and Robert Van Arnam, Raleigh, North Carolina; Williams Mullen, PC, and Turner A. Broughton and Justin S. Feinman, Richmond, Virginia; Spencer Fane LLP and John H. Mowbray, Mary E. Bacon, and Jessica E. Chong, Las Vegas,
for Respondent FN America.

Snell & Wilmer, L.L.P., and Kelly H. Dove, Patrick G. Byrne, V.R. Bohman, and Gil Kahn, Las Vegas,
for Respondents Daniel Defense Inc. and Sportsman's Warehouse.

Renzulli Law Firm, LLP, and John F. Renzulli, Christopher Renzulli, and Scott C. Allan, White Plains, New York; Evans Fears & Schuttert LLP and Jay J. Schuttert and Alexandria L. Layton, Las Vegas,
for Respondents Colt's Manufacturing Company LLC; Colt Defense LLC; Patriot Ordnance Factory; Christensen Arms; Lewis Machine & Tool Company; and LWRC International LLC.

Pisciotti Malsch and Anthony Pisciotti, Ryan Erdreich, and Danny C. Lallis, Florham Park, New Jersey; Lincoln, Gustafson & Cercos, LLP, and Loren S. Young, Las Vegas,
for Respondent Noveske Rifleworks LLC.

The Chiafullo Group, LLC, and Christopher M. Chiafullo, New York, New York; The Amin Law Group, Ltd., and Ismail Amin and Jessica S. Guerra, Las Vegas,
for Respondents Discount Firearms and Ammo LLC; DF&A Holdings, LLC; and Maverick Investments, LP.

Hejmanowski & McCrea LLC and Paul R. Hejmanowski, Las Vegas,
for Respondent Discount Firearms and Ammo LLC.

Swanson, Martin & Bell LLP and James B. Vogts, Chicago, Illinois; Murchison & Cumming, LLP, and Michael J. Nunez, Las Vegas,
for Respondent Guns and Guitars Inc.

Fennemore Craig, P.C., and Therese M. Shanks, Reno; Claggett & Sykes Law Firm and Micah Echols, Las Vegas,
for Amicus Curiae Nevada Justice Association.

Supreme Court
OF
Nevada

(O) 1947A

Shook, Hardy & Bacon, L.L.P., and Victor E. Schwartz, Washington D.C.; Shook, Hardy & Bacon L.L.P., and Jennifer N. Hatcher, Kansas City, Missouri,
for Amicus Curiae National Shooting Sports Foundation.

---

BEFORE THE SUPREME COURT, EN BANC.

*OPINION*

By the Court, PICKERING, J.:

NRS 41.131(1) provides that "[n]o person has a cause of action against the manufacturer or distributor of any firearm or ammunition merely because the firearm or ammunition was capable of causing serious injury, damage or death." Currently pending in Nevada's federal district court is a suit brought by the parents of a victim of the Route 91 Harvest Festival massacre against the manufacturers and distributors of the AR-15 rifles the gunman used. The federal court has determined that the complaint plausibly alleges that the AR-15s violated state and federal machinegun prohibitions. It now asks this court to decide whether the allegation of illegality allows the parents' wrongful death and negligence per se claims to proceed, despite the immunity NRS 41.131(1) declares. We hold that it does not and that, as written, NRS 41.131 provides the gun manufacturers and distributors immunity from the claims asserted against them under Nevada law in this case.

I.

A.

Carrie Parsons was killed in the October 1, 2017, mass shooting that occurred at the Route 91 Harvest Festival outdoor concert in Las

Vegas, Nevada. In the 32nd-floor hotel room from which he fired, the shooter had amassed an arsenal of high-capacity magazines; bump stocks— a tool that replaces the standard stock of an AR-15 rifle and uses the firearm's recoil mechanism to enable continual (i.e., automatic) fire with a single trigger pull—; and 12 AR-15 semi-automatic rifles that respondents (collectively, the gun companies) manufactured and/or sold. The shooter replaced the standard stocks of his AR-15 rifles with those bump stocks and fired 1,049 rounds, in just 10 minutes, into the crowd of country music fans gathered below. The shooter killed 58 people that night, including Carrie, and injured hundreds more, then committed suicide.

James and Ann-Marie Parsons sued the gun companies in Nevada state court, alleging (1) wrongful death caused by the companies' knowing violation of 18 U.S.C. § 922(b)(4) (2019) (prohibiting the sale or delivery of machineguns "except as specifically authorized by the Attorney General consistent with public safety and necessity") and NRS 202.350(1)(b) (similar); (2) negligence per se under the same statutes; and (3) negligent entrustment. The gun companies timely removed the case to federal court, where they filed a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure (FRCP). The motion argued that the complaint failed to state claims upon which relief could be granted and that the federal Protection of Lawful Commerce in Arms Act (PLCAA), 15 U.S.C. §§ 7901-03 (2019), and NRS 41.131 bar the Parsonses' claims as a matter of law.

The federal district court granted the motion to dismiss the negligent entrustment and negligence per se claims, but denied it as to the wrongful death claim based on the so-called "predicate exception" to the PLCAA. Enacted in 2005, the PLCAA's declared purpose is to "prohibit

causes of action against manufacturers [and] distributors . . . of firearms . . . for the harm solely caused by the[ir] criminal or unlawful misuse by others when the product functioned as designed and intended." 15 U.S.C. § 7901(b)(1) (2019); *see also id.* §§ 7902(a)-(b), 7903(5)(A). But the PLCAA's predicate exception permits "action[s] in which a manufacturer or seller . . . knowingly violated a State or Federal statute applicable to the sale or marketing of the product, and the violation was a proximate cause of the harm for which relief is sought." 15 U.S.C. § 7903(5)(A)(iii). Invoking the PLCAA's predicate exception, the Parsonses argued to the district court that the ease with which an AR-15 can be modified to enable full automatic fire brings the rifle within the federal and state definitions of "machinegun," *see* 26 U.S.C. § 5845(b) (2019) (defining a machinegun as "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger"); NRS 202.350(8)(c) (2015) ("'Machine gun' means any weapon which shoots, is designed to shoot or can be readily restored to shoot more than one shot, without manual reloading, by a single function of the trigger.") (recodified as NRS 202.253(6) (2021)), and the associated restrictions on their manufacture and sale. *See* 18 U.S.C. § 922(b)(4); NRS 202.350(1)(b).

After reviewing the Parsonses' complaint, the federal district court provisionally credited their argument. It concluded that the complaint plausibly alleged that the gun companies "knowingly manufactured and sold weapons 'designed to shoot' automatically because they were aware their AR-15s could be easily modified with bump stocks to do so[,]" thereby violating federal and state machinegun prohibitions. *Parsons v. Colt's Mfg. Co., LLC*, No. 2:19-cv-01189-APG-EJY, 2020 WL

Supreme Court
OF
Nevada

(O) 1947A

5

1821306, at *5-6 (D. Nev. April 10, 2020) (holding that, "[f]or purposes of a motion to dismiss, this allegation [of easy modifiability to enable automatic fire] supports a plausible claim for relief") (citing 18 U.S.C. § 922(b)(4) and NRS 202.350(1)(b)); *Parsons v. Colt's Mfg. Co., LLC*, No. 2:19-cv-01189-APG-EJY, 2020 WL 4059685, at *4 (D. Nev. July 20, 2020) (denying reconsideration); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (holding that plaintiff must make sufficient factual allegations to allege a plausible claim for relief to survive a motion to dismiss under FRCP 12(b)(6)). On this basis, the district court held that "[t]he Parsons have alleged a wrongful death claim that is not precluded by the PLCAA." *Parsons, supra*, 2020 WL 41821306, at *6; *see generally* Anya Sanko & Dylan Lawter, *Guns in the Sky: Nevada's Firearm Laws, 1 October, and Next Steps*, 5 Nev. L.J.F. 34, 46-59 (2021).

This left the question whether the immunity NRS 41.131 declares is broader than that provided by the PLCAA in this case. The federal district court declined to decide this question of state law in the first instance, instead certifying two questions about NRS 41.131's scope to this court under NRAP 5. The federal court later reconsidered its dismissal of the negligence per se claim and certified an additional question to us about Nevada's negligence per se doctrine. It reserved final ruling on the motion to dismiss the wrongful death and negligence per se claims pending our decision on the certified questions.

### B.

The certified questions the federal district court has forwarded are thus three:

1. Does a plaintiff asserting a wrongful death claim premised on allegations that firearms manufacturers and dealers knowingly violated federal and state machine gun prohibitions have

"a cause of action against the manufacturer or distributor of any firearm . . . merely because the firearm or ammunition was capable of causing serious injury, damage or death, was discharged and proximately caused serious injury, damage or death[,]" under [NRS 41.131]?

2. Does [NRS 41.131] allow a wrongful death claim premised on allegations that firearms manufacturers and dealers knowingly violated federal and state machine gun prohibitions because the statute is "declaratory and not in derogation of the common law"?

3. [C]an a plaintiff assert a negligence per se claim predicated on violations of criminal federal and state machine gun prohibitions absent evidence of legislative intent to impose civil liability?

Rule 5 of the Nevada Rules of Appellate Procedure "gives this court discretionary authority to accept and answer certified questions of Nevada law that 'may be determinative of the cause then pending in the certifying court.'" *Progressive Gulf Ins. Co. v. Faehnrich*, 130 Nev. 167, 170, 327 P.3d 1061, 1063 (2014) (quoting NRAP 5). In answering certified questions, this court accepts the facts stated by the forwarding court in its certification order. *SFR Invs. Pool 1, LLC v. Bank of N.Y. Mellon*, 134 Nev. 483, 489 n.5, 422 P.3d 1248, 1253 n.5 (2018). We also, necessarily, accept the certifying court's determinations with respect to its own substantive and procedural law. *See* Eric C. Surette, Annotation, *Construction and Application of Uniform Certification of Questions of Law Act*, 69 A.L.R. 6th 415, 468 (2011) ("[I]n answering questions posed by a federal court . . . , the parameters of state law claims or defenses identified by the submitted questions may be tested, but it is not the answering court's office to intrude (by its responses) upon the certifying court's decision-making process.").

The federal district court's questions all incorporate its determination that the complaint plausibly alleges that the gun companies' manufacture and sale of the AR-15s "violated federal and state machine gun prohibitions." As the answering court, "our role 'is limited to answering the questions of [state] law posed to [us].'" *Progressive Gulf Ins. Co.*, 130 Nev. at 170, 327 P.3d at 1063 (second alteration in original) (quoting *In re Fontainebleau Las Vegas Holdings, LLC*, 127 Nev. 941, 955, 267 P.3d 786, 794-95 (2011)). For purposes of this case, we therefore accept, without independently deciding, the federal court's determination that an AR-15 rifle may fit the federal and state definitions of machinegun.[1] Although the federal district court has deferred final resolution of the machinegun issue to further factual and legal development, this does not make our answers to its certified questions impermissibly advisory. *See Echeverria v. State*, 137 Nev., Adv. Op. 49, 495 P.3d 471, 475 (2021) (noting in the context of NRAP 5 that "[t]his court lacks the constitutional power to render advisory opinions"). Depending on the answers we give, Nevada law may resolve the case at the pleading stage, without need of further proceedings. Thus, the questions are sufficiently outcome-determinative to satisfy NRAP 5, and we exercise our discretion in favor of accepting and answering them.

---

[1]We note but express no opinion on the 2019 amendment to NRS 202.253(6)(c) (recodified as NRS 202.253(8)(c) (2021)), which partially defines a "semiautomatic firearm" as "not a machine gun." *Cf. Staples v. United States*, 511 U.S. 600, 602-06 (1994) (discussing semiautomatic nature of AR-15 rifles when determining mens rea requirements under 26 U.S.C. § 5861(d), without deciding whether an AR-15 rifle is a "machinegun"). The federal and Nevada statutes differ in how they spell "machinegun." This opinion uses "machinegun" except where the quoted source writes "machine gun" out as two words.

The federal district court's questions ask us to interpret NRS 41.131. The "whole-text" canon requires that, in construing a statute, "[t]he text must be construed as a whole." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 167 (2012); *Orion Portfolio Servs. 2 LLC v. Cty. of Clark ex rel. Univ. Med. Ctr. of S. Nev.*, 126 Nev. 397, 403, 245 P.3d 527, 531 (2010) ("This court has a duty to construe statutes as a whole, so that all provisions are considered together and, to the extent practicable, reconciled and harmonized."). Our analysis therefore begins with the full text of NRS 41.131, which provides:

> 1. No person has a cause of action against the manufacturer or distributor of any firearm or ammunition merely because the firearm or ammunition was capable of causing serious injury, damage or death, was discharged and proximately caused serious injury, damage or death. This subsection is declaratory and not in derogation of the common law.

> 2. This section does not affect a cause of action based upon a defect in design or production. The capability of a firearm or ammunition to cause serious injury, damage or death when discharged does not make the product defective in design.

*See* NRS 0.039 (defining "person" to mean "a natural person, any form of business or social organization and any other nongovernmental legal entity"). NRS 41.131 was enacted in 1985, twenty years before the PLCAA. 1985 Nev. Stat., ch. 480, § 1, at 1469-70. But similar to the PLCAA, *see* 15 U.S.C. § 7901(b)(1), its purpose was to establish that "if someone shoots a firearm and hurts somebody, you can't sue the firearms manufacturer because it shoots." Hearing on S.B. 211 Before the Assemb. Judiciary Comm., 63d Leg. (Nev., Apr. 17, 1985) (statement of Assemb. Robert Sader,




Member, Assemb. Judiciary Comm.); *see also* Hearing on S.B. 211 Before the S. Judiciary Comm., 63d Leg. (Nev. Mar. 13, 1985) (statement of Sen. Robert E. Robinson, Chairman, S. Commerce & Labor Comm.) ("[A] gun in itself is not to be determined as at fault in case of a death or injury . . . . [Rather] the liability would be on the handler of the gun.").

Each side finds in NRS 41.131 language they say unambiguously favors them. The Parsonses argue that the phrase "merely because" instructs that NRS 41.131 is a "no-fault" statute that shields firearm manufacturers and distributors from frivolous lawsuits alleging fault based on only the inherent dangers of firearms, not ones alleging that firearm manufacturers and distributors acted unlawfully in manufacturing or distributing restricted firearms. The gun companies counter that NRS 41.131 broadly immunizes them from all civil actions, with a single exception for products liability actions involving design or production defects that cause the firearm to malfunction—for example, a gun that does not shoot but explodes when the trigger is pulled. But the parties' competing interpretations (and to some extent the district court's phrasing of its questions about NRS 41.131) push the statute's outer bounds and ask that we opine more broadly than is necessary. The answer to the limited dispositive question—does the plausible allegation of illegality take the causes of action asserted here outside the immunity NRS 41.131(1) declares?—lies somewhere in between. *See Progressive Gulf Ins. Co.*, 130 Nev. at 171, 327 P.3d at 1063 (noting that this court may rephrase a certified question in its discretion).

### A.

Looking first to its plain language, *Harris Assocs. v. Clark Cty. Sch. Dist.*, 119 Nev. 638, 641-42, 81 P.3d 532, 534 (2003) (noting that this court starts with the plain language of a statute), NRS 41.131 can be

SUPREME COURT
OF
NEVADA

(O) 1947A

reasonably read to allow the claims at issue here because it uses the phrase "merely because," and the Parsonses' action is arguably premised on fault beyond a firearm's inherent ability to cause harm; that is, the gun companies' manufacture and distribution of illegal machineguns. But NRS 41.131 does not limit the gun companies' immunity to the manufacture and distribution of *legal* firearms. Instead, the Legislature provided that "[n]o person has a cause of action against the manufacturer or distributor of *any firearm* or ammunition" (emphasis added), and "any" conventionally means "all" or "every." *E.g.*, *Legislature v. Settelmeyer*, 137 Nev., Adv. Op. 21, 486 P.3d 1276, 1281 (2021) (holding that the term "any" means "any and all," "one out of many," and "indiscriminately of whatever kind") (quoting *Any*, *Black's Law Dictionary* (6th ed. 1990)); *Dimond v. Linnecke*, 87 Nev. 464, 467, 489 P.2d 93, 95 (1971) (construing "any" to mean "all" or "every"). Because the phrase "any firearm" accordingly means "all firearms," whether legal or illegal—a point that the Parsonses' counsel conceded at oral argument—NRS 41.131 does not require that the firearm manufactured or sold be legal for a gun company to seek shelter from civil liability under it. *See, e.g.*, *Settelmeyer*, 137 Nev., Adv. Op. 21, 486 P.3d at 1281 (reasoning that the term "any" has broad application); *United States v. Cole*, 525 F.3d 656, 659-60 (8th Cir. 2008) (interpreting the phrase "any firearm" broadly).

This court would have to insert the word "legal" or "lawful" between "any" and "firearm" for the Parsonses' allegation of fault to escape NRS 41.131's reach, and this court does not read in implied terms that the Legislature omitted. *See Echeverria v. State*, 137 Nev., Adv. Op. 49, 495 P.3d 471, 476 (2021) ("This court has repeatedly refused to imply provisions not expressly included in the legislative scheme.") (internal quotation omitted). Indeed, unlike NRS 41.131, some states' analogous statutes

condition the immunity they provide on the manufacture or sale of a firearm being *legal*, similar to the PLCAA and its predicate exception, 15 U.S.C. §§ 7902(a), 7903(5)(A)(iii). *E.g.*, Alaska Stat. § 09.65.155 (2020) ("A civil action to recover damages . . . may not be brought against a person who manufactures or sells firearms or ammunition if the action is based on the *lawful* sale, manufacture, or design of firearms or ammunition.") (emphasis added); Ariz. Rev. Stat. Ann. § 12-714 (2016) ("Businesses . . . that are engaged in the *lawful sale* to the public of firearms or ammunition are not, and should not be liable for the harm caused by those who unlawfully misuse firearms or ammunition.") (emphasis added); S.D. Codified Laws § 21-58-2 (2004) ("No firearm manufacturer, distributor, or seller who *lawfully* manufactures, distributes, or sells a firearm is liable to any person or entity, or to the estate, successors, or survivors of either, for any injury suffered, including wrongful death and property damage, because of the use of such firearm by another.") (emphasis added); *see also* N.H. Rev. Stat. Ann. § 508:21 (2010) (providing immunity to firearm manufacturers and distributors for the criminal acts of a third party but stating that this immunity does not apply to "an action brought against a manufacturer [or distributor] convicted of a felony under state or federal law, by a party directly harmed by the felonious conduct"); Charles J. Nagy, Jr., *American Law of Products Liability* § 106:4 (3d ed. 2016) (compiling state immunity statutes applicable to manufacturers and distributors of firearms).

More like NRS 41.131 is Indiana code section 34-12-3-3(2) (2021), which provides that "a person may not bring or maintain an action against a firearms or ammunition manufacturer . . . or seller for . . . recovery of damages resulting from the criminal or unlawful misuse of a firearm or ammunition for a firearm by a third party." And in *KS&E*

*Sports v. Runnels*, the Indiana Supreme Court held that this analogous statute limited gun companies' liability for harms caused by third parties, even if the gun company acted unlawfully, because the Indiana Legislature purposefully omitted the term "lawful" from the statute's second subsection. 72 N.E.3d 892, 899 (Ind. 2017); *cf.* Ind. Code Ann. § 34-12-3-3(1) (providing immunity from suits related to the "lawful" design, manufacture, marketing, or sale of a firearm or ammunition). Like subsection 2 of Indiana's statute, NRS 41.131 does not expressly "den[y] immunity to firearms sellers that violate the law." *Runnels*, 72 N.E.3d at 899. And because the Nevada Legislature did not reserve the protections of NRS 41.131 to the manufacture and sale of *legal* weapons, the alleged illegality of AR-15 rifles appears to be immaterial.

This interpretation does not render the phrase "merely because" meaningless, as the Parsonses maintain. First, NRS 41.131(2) expressly limits the immunity NRS 41.131(1) declares, providing that, "[t]his section does not affect a cause of action based upon a defect in design or production"—e.g., the mismanufactured firearm that explodes and injures bystanders when the trigger is pulled—allowing actions asserting such fault to proceed. Second, NRS 41.131(1) does not categorically immunize firearm manufacturers and distributors from liability for independent acts of negligence; that is, acts that create an unreasonable risk of harm above and beyond that posed by the firearm's inherent dangerousness. As an example, consider the sporting goods store (a gun distributor) whose clerk leaves a loaded firearm out on the counter that a patron picks up and pulls the trigger on, thinking the chamber was empty, injuring the person next to her. In that case, the cause of action does not arise "merely because" the gun "was capable of causing serious injury,

damage or death, was discharged and proximately caused serious injury, damage or death." NRS 41.131(1). The clerk's negligence in leaving the loaded firearm out on the display case gives rise to the cause of action for direct or vicarious liability, not the firearm's inherent capacity to shoot and, when shot, to injure or kill.

B.

NRS 41.131's history contextually supports this reading. The Nevada Legislature enacted NRS 41.131 in 1985. 1985 Nev. Stat., ch. 480, § 1, at 1469-70. At that time, machineguns were legal to manufacture, sell, transfer, and possess under Nevada law. It was not until 1989 that Nevada defined "machine gun" and prohibited its possession and use, see 1989 Nev. Stat., ch. 309, § 1, at 653-54, and not until 2003 that Nevada prohibited the manufacture and sale of machineguns. 2003 Nev. Stat., ch. 256, § 6, at 1351. And although Congress prohibited firearms manufacturers and dealers from selling or delivering machineguns to persons other than those authorized by the Secretary of State in 1968, Gun Control Act of 1968, Pub. L. No. 90-618, §§ 922, 5845, 82 Stat. 1216-17, 1230-31 (1968), it was not until 1986 that Congress prohibited the transfer or possession of all machineguns other than for official governmental use. Firearm Owners' Protection Act of 1986, Pub. L. No. 99-308, § 102, 100 Stat. 451, 452-53 (1986) (providing that "it shall be unlawful for any person to transfer or possess a machinegun").

These post-1985 criminal prohibitions demonstrate that Congress and the Nevada Legislature recognized the grave danger that machineguns pose in civilian hands. Yet, despite the decision to impose criminal penalties for the manufacture and sale of machineguns unless federally authorized, the Nevada Legislature did not eliminate or amend

NRS 41.131 to permit civil actions seeking damages for conduct alleged to violate those prohibitions when it enacted them.[2] For us to hold that the immunity NRS 41.131(1) declares does not reach suits involving machineguns because of the later-enacted statutes criminalizing their distribution, we would have to treat those later statutes as having impliedly repealed a portion of the civil immunity NRS 41.131 originally conferred. "Repeals by implication are disfavored—very much disfavored"—and limited to the rare situation where a new statutory provision "flatly contradicts an earlier-enacted provision." Antonin Scalia & Bryan A. Garner, *supra*, at 327; *cf. Washington v. State*, 117 Nev. 735, 739, 30 P.3d 1134, 1137 (2001) (noting that the practice of implied repeal is "heavily disfavored"). Such flat contradiction does not appear here.

Nor is it the case that in 1985 when the Legislature enacted NRS 41.131 all firearms and types of ammunition were legal, such that its reference to "*any* firearm or ammunition" arguably only contemplated legal firearms and ammunition. On the contrary, in 1977 the Legislature passed a statute making it illegal to manufacture or sell a short-barreled rifle or shotgun, 1977 Nev. Stat., ch. 437, § 3, at 879-80 (now codified as NRS 202.275), and in 1983 it passed a statute making it unlawful to manufacture

---

[2]The Legislature has further passed statutes in which it "reserves for itself such rights and powers as are necessary to regulate the transfer, sale, purchase, possession, carrying, ownership, transportation, storage, registration and licensing of firearms, firearm accessories and ammunition in Nevada." NRS 268.418(2); NRS 269.222(2); NRS 244.364(2); *see also* NRS 12.107 (providing that "the State of Nevada is the only governmental entity . . . that may commence a lawsuit against a [firearm] manufacturer or distributor" for claims "resulting from or relating to the lawful design or manufacture . . . or the marketing or sale of a firearm or ammunition to the public," except suits by local governments for breach of contract or warranty concerning purchased firearms or ammunition).

SUPREME COURT
OF
NEVADA

(O) 1947A

15

and sell a "metal-penetrating bullet capable of being fired from a handgun." *See* 1983 Nev. Stat., ch. 327, § 2, at 800 (now codified as NRS 202.273). Yet despite these statutes, which predated NRS 41.131, and despite the series of amendments to NRS Chapter 202 adding, then expanding, criminal prohibitions on machineguns, the Legislature has left NRS 41.131 as originally enacted, with its wording unchanged, from 1985 to the present day.

## C.

The federal district court and the parties next direct us to the second sentence of NRS 41.131(1)—"This subsection is declaratory and not in derogation of the common law." This sentence alludes to two long-standing canons of statutory construction: (1) "Statutes declaratory of the common law are coextensive with the common law and no change in meaning is presumed to have been intended by their enactment," 1A Norman J. Singer & J.D. Shambie Singer, *Statutes and Statutory Construction* § 26:5 (7th ed. 2009); *see also State v. Babayan*, 106 Nev. 155, 171, 787 P.2d 805, 816-17 (1990) (noting that a declaratory statute affirms existing law and leaves it more clearly in force); and (2) "Courts narrowly, or strictly, construe statutes in derogation of the common law," 3 Shambie Singer, *Statutes and Statutory Construction* § 61:1 (8th ed. 2020); *see also Gibellini v. Klindt*, 110 Nev. 1201, 1208, 885 P.2d 540, 545 (1994). As such, the second sentence in NRS 41.131(1) serves simply as an interpretive guide, providing that the statute should receive a fair reading, consistent with the common law, not the strict or narrow reading historically given statutes that overturn or derogate from the common law. *See* 3 Singer, *supra*, § 61:4 (collecting and discussing statutory provisions abrogating the canon that statutes that derogate from the common law are strictly or narrowly construed).

NRS 41.131(1) thus directs reference to the common law in interpreting the immunity it declares. It does not evince a "protective" or remedial purpose, as the gun companies contend, requiring us to interpret NRS 41.131 liberally in their favor. But neither does the common law to which NRS 41.131(1) refers establish that the Parsonses have a cause of action against the gun companies for the illegal manufacture and distribution of machineguns, as they maintain.

When the Legislature enacted NRS 41.131 in 1985, Nevada common law did not address whether a firearm manufacturer or distributor could be held liable in tort to a third party for injuries or death caused by the criminal misuse of the firearm. *But cf. Thomas v. Bokelman*, 86 Nev. 10, 13, 462 P.2d 1020, 1022 (1970) (upholding summary judgment for the defendant owner of a firearm used by a third party to shoot and kill the victim on the grounds that the third party's criminal act was a superseding cause of the victim's death). Authority from outside Nevada had held that there is no common-law basis for imposing a duty on firearm manufacturers and distributors for third-party criminal misuse of firearms. *Riordan v. Int'l Armament Corp.*, 477 N.E.2d 1293, 1295 (Ill. App. Ct. 1985) (holding that a firearm manufacturer does not have a common-law duty to control the distribution of nondefective handguns to the public); *see also Cassisi v. Maytag Co.*, 396 So. 2d 1140, 1143 (Fla. Dist. Ct. App. 1981) ("[O]ne who is injured while using a perfectly made axe or knife would have no right to a strict liability action against the manufacturer because the product that injured him was not defective."). But this authority was nascent and did not address whether a weapon's illegality or restrictions of its distribution changed that rule. And the uncertainty as to this issue persists to this day, as the federal court's certification order attests.

This court confronted a similar interpretive challenge in *Hamm v. Carson City Nugget, Inc.*, 85 Nev. 99, 450 P.2d 358 (1969), and its progeny, *Hinegardner v. Marcor Resorts, L.P.V.*, 108 Nev. 1091, 1093, 844 P.2d 800, 802 (1992); *Yoscovitch v. Wasson*, 98 Nev. 250, 252, 645 P.2d 975, 976 (1982); *Bell v. Alpha Tau Omega Fraternity*, 98 Nev. 109, 111, 642 P.2d 161, 162 (1982); and *Davies v. Butler*, 95 Nev. 763, 777, 602 P.2d 605, 614 (1979). The issue in *Hamm* was "whether the heirs of pedestrians who were killed by [a drunk driver] have a claim for relief for wrongful death against the tavern keeper who unlawfully sold liquor to the offending driver." 85 Nev. at 99, 450 P.2d at 358. Nevada common law did not answer whether liability could be imposed in this instance. *Id.* at 100, 450 P.2d at 359. Cases elsewhere were split, and strong policy arguments existed both for and against imposing liability. *Id.* at 100-01, 450 P.2d at 359. And, while the Nevada Legislature had criminalized providing liquor to minors and drunk adults, it did not provide for civil liability for violation of these prohibitions except, in a limited way, for selling liquor to minors. *See id.* at 102, 450 P.2d at 360. After discussing the law pro and con from elsewhere and the competing policies involved, this court concluded, "In the final analysis the controlling consideration is public policy and whether the court or the legislature should declare it." *Id.* at 100, 450 P.2d at 359. In the end, it decided against judicially imposing common-law liability, holding that "if civil liability is to be imposed [in this setting], it should be accomplished by legislative act after appropriate surveys, hearings, and investigations to ascertain the need for it and the expected consequences to follow." *Id.* at 101, 450 P.2d at 359; *see Hinegardner*, 108 Nev. at 1096, 844 P.2d at 803-04.

SUPREME COURT
OF
NEVADA

(O) 1947A

NRS 41.131(1)'s reference to the common law as the rule of decision incorporates this line of cases. As in *Hamm*, this case poses profound and competing public policy concerns. The Legislature has passed numerous statutes regulating firearms, but it has not imposed private civil liability for the manufacture and distribution of illegal firearms in violation of federal or state law. Similar to *Hamm*, the decision whether or not to do so is legislative, not judicial.

## III.

Our decision with respect to the immunity provided by NRS 41.131 makes it unnecessary to separately address the federal court's third question about Nevada's negligence per se doctrine. On this issue, the parties provide divergent strands of authority advocating for and against a prerequisite of legislative intent to allow a party's use of negligence per se to establish the standard of care and breach in a negligence action. While that point may warrant clarification in a future case, the immunity provided in NRS 41.131 obviates the need to consider it here. *See Hamm*, 85 Nev. at 101-02, 450 P.2d at 360.

## IV.

In response to the questions certified to us by the federal district court, we hold that NRS 41.131 provides the gun companies immunity from the wrongful death and negligence per se claims asserted against them under Nevada law in this case. We in no way underestimate the profound public policy issues presented or the horrific tragedy the Route 91 Harvest Festival mass shooting inflicted. But this is an area the Legislature has occupied extensively. If civil liability is to be imposed against firearm manufacturers and distributors in the position of the gun companies in this case, that decision is for the Legislature, not this court. We urge the Legislature to act if it did not mean to provide immunity in

SUPREME COURT
OF
NEVADA

(O) 1947A

situations like this one. But as written, NRS 41.131 declares a legislative policy that the Parsonses cannot proceed with these claims under Nevada law.

_____, J.
Pickering

We concur:

_____, C.J.
Hardesty

_____, J.
Stiglich

_____, J.
Silver

_____, J.
Parraguirre

_____, J.
Cadish

_____, J.
Herndon

SUPREME COURT
OF
NEVADA

(O) 1947A

20